Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 405 | **DATE** | 8/3/2000 |
| **CASE TITLE** | FCNBD Mortgage Investments, Inc. Vs. CRL, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | AUG 04 2000 date docketed |
| | Notified counsel by telephone. | UW docketing deputy initials |
| ✓ | Docketing to mail notices. | AUG 04 2000 date mailed notice |
| ✓ | Mail AO 450 form. | UW mailing deputy initials |
| | Copy to judge/magistrate judge. | |

Document Number: 13

WAH — courtroom deputy's initials

ED-7 FILED FOR DOCKETING 00 AUG -3 PM 4:16

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FCNBD MORTGAGE INVESTMENTS, INC., Plaintiff,

vs. No. 00 C 405

CRL, INC., Defendant.

DOCKETED AUG 04 2000

MEMORANDUM OPINION AND ORDER

In September 1998, the parties here entered into two purchase agreements whereby defendant CRL, Inc. (CRL) committed to buy two pools of mortgage loans from plaintiff FCNBD Mortgage Investments, Inc. (FCNBD), a wholly-owned subsidiary of The First National Bank of Chicago (First Chicago). CRL is a real estate investment trust company that buys and sells real estate-related assets in the secondary market. Following a due diligence examination of the mortgage pools -- allowed pursuant to paragraph 4 of the commitment agreements -- CRL apparently concluded that the risk of loss was too great and communicated its intention not to purchase the mortgage pools to the plaintiff's agent in New York. FCNBD subsequently resold the mortgage loans, but due to the fact that prices for mortgage loans had dropped in the interim, FCNBD allegedly received in excess of $2,500,000 less than it would have under the original agreements with CRL.

Plaintiff filed this diversity action in January 2000 to recover the difference. Defendant has filed a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the grounds that the court lacks personal jurisdiction over CRL. Defendant is a Virginia corporation, with its principal place of business in Richmond, Virginia. It does not have offices

13

or operations of any kind in Illinois. Because we agree that the contract negotiations between FCNBD and CRL did not create sufficient "minimum contacts" with the State of Illinois to satisfy constitutional due process requirements, CRL's motion to dismiss is granted.

## BACKGROUND

In considering a motion to dismiss for lack of personal jurisdiction, a court may receive and weigh affidavits submitted by the parties. Blanco Oso Int'l Trading Co. v. Southern Scrap Material Co., Ltd., 735 F.Supp. 294 (N.D.Ill. 1990). Any factual conflicts must be resolved in favor of the plaintiff. Torco Oil Co. v. Innovative Thermal Corp., 730 F.Supp. 126, 128 (N.D.Ill. 1989). Read in this light, the facts are as follows.

In August 1998, FCNBD, with Credit Suisse First Boston (Credit Suisse) acting as its "Financial Advisor," offered to sell $744,000,000 in adjustable-rate residential first lien mortgage loans into the secondary market. At that time a Credit Suisse representative in New York telephoned CRL in Virginia to solicit a bid to purchase some or all of the loans[1] (Robert Hunter (Hunter) Declaration at ¶¶ 2, 3). During the telephone conversation, CRL expressed an interest in reviewing the loans for a potential bid. In September, Credit Suisse sent a "Confidentiality Agreement" to Hunter, president and chief investment officer at CRL, which he signed and returned to New York. He received the formal bid package shortly thereafter from New York.

The package contained a Confidential Offering Memorandum (offering memorandum)

---

[1] The events leading up to CRL's receipt of the offering memorandum are interpreted differently by the parties, although, even in its surreply, plaintiff does not contest defendant's detailed chronology. Plaintiff suggests CRL initiated the transaction when it expressed an interest in acquiring the loans. But Robert Hunter represents that CRL was unaware of FCNBD's desire to sell the loans until the phone call from New York. Thus, defendant starts the film rolling when "Credit Suisse telephoned CRL for the sole purpose of soliciting a bid to buy the loans." Neither party suggests how CRL came to be on the Credit Suisse call list.

and a standard bid form. The offering memorandum states that it "is being furnished to a limited number of qualified parties who have expressed an interest in acquiring one or more of the Mortgage Pools" (Plf.'s Appendix, Exhibit 2 at 7). The offering memorandum also informed CRL that FCNBD was a subsidiary of First Chicago *(id.* at 5); that Credit Suisse was acting as financial advisor *(id.* at 6); that each winning bidder would receive a "Commitment Letter" of the form attached thereto[2] *(id.* at 8); that acceptance of the terms would be acknowledged by returning a signed copy of a commitment letter "to FCNBD Mortgage Investments, Inc." *(id.* at Annex I, p.3 (form commitment letter)); that payment would be made by wire to an account designated by FCNBD[3]; and that the commitment letters required CRL to enter into an "Assignment, Assumption and Recognition Agreement" (the assignment agreement) with both FCNBD and the servicer of the purchased loans. The assignment agreement, a form copy of which was appended to the offering memorandum, included a choice-of-law provision dictating that "[t]his agreement shall be construed in accordance with the laws of the State of Illinois..." (Def.'s Exh. 2, Annex 2, at 2).

The offering memorandum made it quite clear to recipients that

> [a]ll contact should be made through Credit Suisse First Boston. Under no circumstances should First Chicago NBD Corporation, the seller (as defined herein), their affiliates or their management, employees or customers be

[2] Plaintiff's brief represents that the offering memorandum informed CRL "that each winning bidder would receive a Commitment Letter *directly* from FCNBD" (Plf's brief at 2-3, emphasis added)). The cited pages do not say that. The form letter does include a signature line for FCNBD representatives, but given the clear message that all communication was to be channeled through Credit Suisse, the signature line does not lead to the suggested inference. Such broad strokes would be unimportant on a different issue, but here, where defendant's expectations and the situs of alleged contacts are central to this court's jurisdiction, this loose characterization is unhelpful, at best.

[3] Plaintiff argues that CRL knew that account would be FCNBD's account at First National in Chicago "because CRL had contracted with FCNBD before and had sent its payment to FCNBD's account at The First National Bank of Chicago" (Plf.'s Response at 3).

> contacted directly. Credit Suisse First Boston is acting solely as agent for the seller in connection with the proposed transactions described herein.

Appendix, Exhibit 2, at 1-35 (prohibition appears as footer, in caps, at the bottom of each page of the offering memorandum). Accordingly, after CRL executed a standard form bid letter at its offices in Richmond, Virginia, it transmitted the bid letter by facsimile to Credit Suisse in New York.

On September 17, 1998, FCNBD contacted CRL via letter,[4] accepting CRL's offer to buy the loans and describing the terms and provisions of the sale. CRL representatives signed the commitment letters (final commitment letters; one for the 3/3 pool and one for the 5/5 pool) in Richmond and faxed them back to Credit Suisse in New York. The parties did not sign or enter into an assignment agreement.

As noted above, the commitment agreements gave CRL "the right to perform due diligence and underwrite each of the Mortgage Loans and to review the Mortgage Loan files prior to the Settlement Date [tentatively scheduled for October 15, 1998] to assure that the Mortgage Loans comply with the terms of the Purchase and Servicing Agreement" (final commitment letters, at ¶ 4).[5] CRL retained Mortgage Data Management Corporation, an unaffiliated due diligence firm in Wisconsin, to review FCNBD's loan files. Upon conducting timely due diligence, Mortgage Data allegedly determined that 77% of the loans failed to meet applicable guidelines, and that 62% of the loans posed an unacceptable risk of loss to CRL.

---

[4] FCNBD's Eric Hillenbrand declares that he signed "and caused to be mailed to CRL" the two commitment letters. Hunter states that he received the commitment letters from Credit Suisse in New York. The two versions are not necessarily inconsistent if Hillenbrand mailed the letters to Credit Suisse for forwarding to Virginia.

[5] The paragraph also provided that CRL "shall not be permitted to reject more than 5% of the Mortgage Loans (as measured by unpaid principal balance as of the Cut-off Date)."

CRL communicated these findings to Credit Suisse in New York and, in the language of the complaint, "reneged on its contract to buy the ... mortgage loans" (Cplt. at ¶¶ 9, 12). It is undisputed that all actions by CRL took place in Richmond, Virginia, and all CRL correspondence regarding the transaction was directed to Credit Suisse in New York.

## DISCUSSION

A federal district court exercising diversity jurisdiction has personal jurisdiction only over defendants who would be subject to suit in Illinois' state courts. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997). Under Illinois' long-arm statute a defendant may be found to have submitted to the specific jurisdiction of the courts of Illinois if, in person or through an agent, he transacts "any business within this State," 735 ILCS 5/2-209(a)(1), or makes or performs "any contract or promise substantially connected with this State," 735 ILCS 5/2-209(a)(7). Under 735 ILCS 5/2-209(c), an Illinois court may also exercise jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Thus, the reach of Illinois' long arm statute terminates at the boundaries created by state and federal due process guarantees. *See* Jones v. Sabis Educational System, Inc., 52 F.Supp.2d 868, 883 (N.D.Ill. 1999).

Under the Illinois constitution, personal jurisdiction exists "'when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois.'" Jamik, Inc. v. Days Inn of Mount Laurel, 74 F.Supp.2d 818, 821 (N.D.Ill. 1999) (*quoting* Rollins v. Ellwood, 141 Ill.2d 244 (Ill. 1990)). Similarly, federal due process concerns are satisfied only where a defendant has sufficient "minimum contacts" with the state

such that he should reasonably anticipate being haled into a forum state court to defend himself. RAR, 107 F.3d at 1277 (*citing* International Shoe Co. v. Washington, 326 U.S. 310, 316 (2000) (other citations omitted). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473 (1985) (citations omitted). "[W]ith respect to interstate contractual obligations, [the Court has] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* (other citations omitted). In short, a party must have engaged in conduct that makes it reasonably foreseeable that the party will be subject to suit in the forum. *See* Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 283 (7th Cir. 1990).

By now it is well settled that a non-resident defendant does not subject itself to personal jurisdiction in Illinois simply by entering into a contract with an Illinois resident. *See* RAR, 107 F.3d at 1277 (*citing* Burger King, 471 U.S. at 479). "Instead, courts consider a number of factors as relevant to the question of specific jurisdiction, including who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract." Ameritech Services, Inc. v. SCA Promotions, 2000 WL 283098, at *3 (N.D.Ill. March 6, 2000) (citing RAR, 107 F.3d at 1277; Dillon Enterprises, Ltd. v. Breland Builders, Inc., 1998 WL 525173, at *2 (N.D.Ill. Aug. 19,

1998)).

Considering each of these factors, we conclude that CRL, by its actions, did not subject itself to personal jurisdiction in Illinois. The transaction was initiated when Credit Suisse in New York placed the phone call to CRL in Virginia. Intermediate negotiations (including the exchange of the confidentiality agreement and bid package) involved only the New York agent and CRL representatives in Virginia. These procedures were at the explicit direction of NBD through its agent, Credit Suisse. Had plaintiff structured the negotiations differently, there would have been a different history and, possibly, a different result here.

The contract was created when CRL signed the commitment letter in Virginia and sent it to New York. Under Illinois law, the "place where the last act necessary to give validity to the contract is done is the place where the contract is made." Gordon v. Tow, 498 N.E.2d 718, 722-23 (Ill.App. 5th Dist. 1986). Here, that is either Virginia or New York; it is not Illinois. It is true that the signed commitment letter from FCNBD concluded with slightly different instructions than the form letter enclosed with the offering memorandum. The final version asked Hunter to

> [k]indly acknowledge your acceptance of the foregoing by signing and returning by overnight courier the enclosed copy of this letter to Eric Hillenbrand at FCNBD Mortgage Investments Inc., at One First National Plaza, Chicago, Illinois 60670, with an additional copy by facsimile to Craig Knutson of Credit Suisse First Boston Corporation at (212)325-8110.

It appears that Hunter did not follow these instructions and instead merely faxed the signed document to Credit Suisse in New York (Hunter Declaration, at ¶ 8). Nonetheless, plaintiff is suing for a breach of that contract. It therefore believes that a valid contract was formed when CRL signed the contract and sent it to FCNBD's agent in New York.

FCNBD insists, however, that CRL *knew* it was contracting with a Chicago entity and that the money would be wired to Chicago based on prior transactions between the two parties. For our purposes, however, we consider where CRL would have performed the contract. It is clear that performance simply meant initiating a wire transfer in Virginia. *See* Ameritech Services, 2000 WL 283098, at *4 (place where check is drawn is focus); *see also* Asset Allocation & Management Co. v. Western Employees Ins. Co., 892 F.2d 566 (7th Cir. 1989) (mere payment directed into Illinois along with some correspondence cannot be enough or "the breach of any contract between a resident of Illinois and a non-resident [would be] actionable in Illinois"); Prime Leasing, Inc. v. Jackson-Madison County Gen'l Hospital District, 1992 WL 80410, at *6 (N.D.Ill. April 7, 1992) (remittance of lease payments to an Illinois plaintiff by a non-resident defendant is not sufficient to confer personal jurisdiction). In any event, no payment was ever sent or owed prior to the scheduled closing. As one court has noted, the "common thread" which leads the court to dismiss for lack of personal jurisdiction in breach of contract cases is the lack of contract negotiation, formation, or performance in Illinois. C3 Technologies, Inc. v. Richmond Machine & Fabricating, Inc., 1990 WL 106539 (N.D.Ill. 1990). That thread continues here.

Plaintiff argues, however, that by signing the commitment letter, which referenced the form letter, which included an Illinois choice-of-law provision, CRL could reasonably expect that it would be subject to suit in Illinois. We agree that the crux of the issue is whether defendant anticipated, or should reasonably have anticipated, that it was subject to the jurisdiction of Illinois' state courts. We do not agree, however, that the presence of the choice-of-law provision in an attached contract *form* by itself gives constitutionally-adequate fair

warning. First, the provision is not a forum selection provision; it merely indicates that the assignment contract will be construed pursuant to Illinois law. Second, the parties never entered into the assignment contract and so CRL never agreed to be bound by that provision. Third, courts have given these types of provisions greater consideration where the *defendant* has proposed the choice-of-law provision implicating the disputed jurisdiction. *See* Ronco, Inc. v. Plastics, 539 F.Supp. 391, 396 (N.D.Ill. 1982) ("By choosing to apply Illinois law ... defendants sought to invoke the protections and benefits of the law of Illinois."). Here, the term appears in a draft document presented by plaintiff in a transaction initiated by the plaintiff. *Cf.* Torco Oil, 730 F.Supp. at 129 (identity of the party that makes the initial contact leading to the contract is considered a key factual inquiry).

As we have noted on earlier occasions, "due process ensures 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" Ameritech Services, 2000 WL 283098, at * 5 (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)). The structure of the negotiations here would not have led CRL to anticipate being haled into Illinois courts. *See* Heritage House, 906 F.2d at 283.

Plaintiff has not made a prima facie showing that specific personal jurisdiction exists over CRL for claims arising out of the signed commitment letters. Defendant's motion to dismiss is granted.

James B. Moran
JAMES B. MORAN
Senior Judge, U. S. District Court

August 3, 2000.